CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
SEP 14 2005
JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| CHARLES L. CLARK, Jr.<br>Plaintiff | ) ) ) | CASE NO. 5:05CV00001 |
| v. | ) ) ) | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br>Defendant | ) ) ) | By: B. Waugh Crigler<br>U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's September 26, 2002 claim for a period of disability, disability insurance and supplemental security income benefits under the Social Security Act (Act), as amended, 42 U.S.C. §§ 416, 423 and 1381 *et seq*, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand the case for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will recommend that an order enter affirming the Commissioner's final decision, granting judgment to the defendant and dismissing the case from the docket of the court.

In a decision dated February 9, 2004, and eventually adopted as a final agency decision, an Administrative Law Judge (Law Judge) found that plaintiff, who was 38 years old at the time with a high school education and past relevant work as a grocery store stock clerk, met the earnings requirements of the Act on September 16, 2003, the alleged date of disability onset, and that plaintiff continues to meet them through December 31, 2007. (R. 39.) He also found that plaintiff

suffered degenerative disease of the lumbar spine with sciatic pain, degenerative joint disease of the ankles, a learning disorder, and obesity which were severe impairments, though not severe enough to meet or equal any listed impairment. (R. 46.) However, the Law Judge found that these impairments were severe enough to prevent plaintiff from performing his past relevant work. (R. 46.) The Law Judge further was of the view that plaintiff's allegations concerning the limitations imposed by his maladies were not "totally credible," and that he retained the residual functional capacity for sedentary work which did not require climbing, balancing, stooping, crouching, kneeling, crawling and pushing/pulling, as well as work that did not expose plaintiff to heights, moving machinery, temperature extremes and vibrations. (*Id.*) By application of the Medical-Vocational Guidelines ("grids") as to plaintiff's exertional limitations, and by reference to certain portions of the testimony advanced by a vocational expert (VE), the Law Judge concluded that jobs as inspector, hand packager and basic clerical positions were available to plaintiff, and that he was not disabled under the Act. (R. 47.)

The plaintiff appealed, and the Appeals Council remanded the case to the Law Judge for further proceedings, including consideration of a report by Robert Shouey, DPM dated November 4, 2004. (R. 7.) After conducting supplemental proceedings, the same Law Judge issued another decision, once again denying plaintiff's claim for benefits. This time, the Law Judge adopted the medical evidence and findings from the prior proceedings concerning plaintiff's degenerative joint disease, acknowledged that plaintiff's I.Q. ranged between 75 and 90, and found the medical evidence revealed a depressive disorder. However, he concluded that none of these impairments met or equaled any listed impairment. (R. 14-16.) Moreover, the Law Judge was of the view that plaintiff's pain was not severe enough to interfere with his capacity to perform work-related activities, and that his daily activities essentially confirmed that functional capacity. (R. 17.)

2

While the Law Judge continued to believe plaintiff was unable to perform his past relevant work as a grocery store stock clerk, he found plaintiff able to perform full range of light and sedentary work, which was a much broader range of work than he had found plaintiff able to perform at the conclusion of the previous hearing. (R. 18, 20.) Again by application of the grids and by reference to portions of the evidence provided by a VE, the Law Judge found jobs available to the plaintiff, and concluded that he was not disabled under the Act. (R. 20.) The Appeals Council denied review, and this action ensued.

Clearly the plaintiff established a *prima facie* case of disability by demonstrating his inability to perform his past relevant work. 20 C.F.R. §§ 404.1520 and 416.920. The burden, therefore, shifted to the Commissioner to produce evidence that jobs were available to a person with plaintiff's maladies and limitations, and because non-exertional limitations were present, a VE was required to discharge the Commissioner's burden. *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981); *Smith v. Bowen*, 837 F.2d 635 (4th Cir. 1987). Moreover, where, as here, vocational evidence has been adduced, that evidence would be relevant to the ultimate outcome only if the VE has accounted for all the claimant's maladies and their effects as shown by the substantial evidence in the record. *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989).

By the same token, "It is not within the province of [the reviewing] court to determine the weight of the evidence" in proceedings on claims for social security disability benefits, "nor is it [the court's] function to substitute [its] judgment for that of the [Commissioner] if [her] decision is supported by substantial evidence." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); 42 U.S.C.A. §§ 416(I), 423. Objective medical evidence that consists of symptoms, signs and laboratory findings, not just plaintiff's statement of symptoms, must be present to find a disabling impairment. 42 U.S.C.A. § 423(d)(5)(A); *see also, Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir.

3

2001). The Commissioner is granted some latitude under the regulations to make determinations concerning the acceptability of the proof, to resolve any inconsistencies in evidence and to accord weight to the evidence. 20 C.F.R §§ 404.1513,1527-1529 and 416.913, 927-929. The court's review of the Commissioner's final decision is limited to determining whether the Law Judge's factual findings "are supported by substantial evidence and were reached through the application of the correct legal standards." *Hughes v. Barnhart*, 206 F.Supp.2d 771 (W.D.Va. 2002); *Hancock v. Barnhart*, 206 F. Supp.2d 757 (W.D.Va. 2002); *see also, Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In the end, if the Law Judge's resolution of the conflicts in the evidence is supported by extant law and is supported by substantial evidence, then the Commissioner's final decision must be affirmed.

In his motion for summary judgment, plaintiff, by counsel, first contends that the Law Judge's decision to discount the evidence of plaintiff's treating doctor and, instead, to rely on the evidence submitted by non-examining physicians is reversible error. In particular, plaintiff complains that the Law Judge "completely ignored" the evidence submitted by Dr. Shouey concerning the disabling effects of his joint disease in his ankles which limited plaintiff, at best, to sedentary work. (Pl's Motion at 2, R. 220-224.) As a consequence, plaintiff contends that the Law Judge decline to account for Dr. Shouey's view that plaintiff's condition was not responsive to treatment, that plaintiff was unable to walk for any period of time, and that plaintiff needed to elevate his legs in order to relieve swelling and the pain caused thereby. (*Id.; see also*, R. 232-234.) In addition, plaintiff believes that because his own testimony concerning subjective symptoms, i.e. pain, was corroborated by the clearly established fact that treatment did not work to eliminate these symptoms, and because there is undisputed evidence in the record that plaintiff could not afford additional treatment, the Law Judge's determination to discount plaintiff's subjective complaints

4

about the effects of his maladies on the basis that plaintiff did not receive additional treatment was plainly wrong. Distilled, plaintiff challenges the propriety of the Law Judge's almost exclusive reliance on reports from the DDS record consultants to conclude that plaintiff possessed the residual functional capacity for both light and sedentary work.

Moreover, plaintiff contends that the Law Judge failed to assess the totality of the evidence and selectively relied on a skewed understanding of plaintiff's daily activities to support a conclusion that plaintiff had the residual functional capacity for a full range of light and sedentary work. Specifically, plaintiff contends that the Daily Activities Questionnaire and Pain Questionnaire actually demonstrate limitations, corroborated by the medical evidence, which establish that he does "very little on a daily basis." (Pl's Motion at 2; R. 144-152.)

The undersigned notes that the Law Judge's decision of September 23, 2004 not only incorporates his summary of the medical evidence from the first hearing, it goes beyond that to assess the evidence introduced between then and the date of his decision in February 2004. The critical concern here is whether plaintiff has the need to elevate his leg, thus impacting his residual functional capacity and the availability of gainful employment according to the VE. In his February 9, 2004 decision, the Law Judge revealed he had "given consideration and afforded weight to the observations and opinions of the treating physician", namely Dr. Shouey. (R. 44.) He, thus, "adopted" this physician's opinion dated December 1, 2003 which limited plaintiff to sedentary work, with certain limitations he found to exist relating to climbing, balancing, stooping, crouching, kneeling, crawling, pushing/pulling and working around heights, machinery, temperature extremes and vibrations. (R. 44.) Under date of August 30, 2004, Dr. Shouey submitted a supplemental report revealing that, in addition to limitations on ambulation, plaintiff needed "to elevate his legs in order to relieve the pain associated with his degenerative joint

5

disease." (R. 17, 232.) The Law Judge discounted this evidence as being "inconsistent" with and not supported by the record. (R. 17.) Moreover, he noted that Shouey's August 30, 2004 report had been submitted "at the request of counsel" and was "not supported by objective medical findings." (*Id.*) He further noted what he saw as an absence of treatment records from Dr. Shouey after January 20, 2003 to support any medical conclusion that plaintiff needed to elevate his legs. (*Id.*) In the end, the Law Judge relied on the report of a DDS record consultation to support his determination of plaintiff's residual functional capacity.

The Law Judge also was of the view that the character and extent of plaintiff's subjective complaints were so disproportionate to the nature of his malady that "an individual experiencing such severe pain would likely be unable to function in day to day life." (R. 17.) It appears as though he drew this conclusion because the Law Judge believed that plaintiff's daily activities and lack of continued treatment belied the severity of his complaints. In the end, the Law Judge declined to credit any limitations which would disable plaintiff from either light or sedentary work. (*Id.*)

The undersigned is concerned with the fact the Law Judge does not seem to have addressed either plaintiff's inability to pay for further medical treatment (R. 268) or the undisputed fact that the treatment he had received, at least in the form of medications, did not effectuate his recovery. (R. 152.) This evidence provides significant explanation for gaps in treatment and for plaintiff's continued complaints of pain. On the other hand, it does not provide any basis for discrediting Dr. Shouey's supplemental report revealing the need for plaintiff to elevate his legs. As noted by the Law Judge, that report was issued after a gap in Shouey's treatment of the plaintiff, and it was requested by plaintiff's counsel. The fact it was solicited by plaintiff's counsel should have no bearing on its value because most, if not all the evidence a represented claimant submits into the

6

record has been gathered or solicited by counsel. On the other hand, and not that the undersigned would do likewise, the gap in time between plaintiff's last doctor's visit and the report provides a basis for the Law Judge's giving Dr. Shouey's opinion less than full weight.

A careful examination of the evidence in all other respects reveals that the Commissioner's final decision adopting the Law Judge's findings that plaintiff is able to perform light and sedentary work for which a VE has revealed there are jobs available in the economy is supported by substantial evidence. Accordingly, it is RECOMMENDED that an order enter AFFIRMING the final decision, GRANTING judgment to the defendant and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U. S. Magistrate Judge

9/14/05
Date